ROBERT A. CHAISSON, Judge.
|2Woodrow K. Fogg appeals the grant of a summary judgment in favor of his brother, Paul N. Fogg, declaring a trust instrument void due to procedural incapacity of *151 one of the settlors. For the following reasons, we set aside that judgment and remand the matter to the district court for further proceedings.
FACTS AND PROCEDURAL HISTORY
The parties here are the children of Woodrow Fogg and Olive N. Fogg. Woodrow (Sr.) died in 1995 and Olive died in 1998. Prior to their deaths, Woodrow (Sr.) and Olive executed several pertinent documents. The first document, dated June 28, 1994, is a power of attorney in authentic form executed by Olive, giving her husband, Woodrow (Sr.), authority to conduct all of her affairs. On that same date, Woodrow (Sr.) and Olive also confected, by authentic act, a Revocable Living Trust Agreement. It was admittedly signed by Woodrow (Sr.) on his own behalf. Olive’s purported signature is in Woodrow’s (Sr.) handwriting, followed by the notation “POA,” and it is generally agreed that Woodrow (Sr.) signed Olive’s name on the document. A third document, by | ^authentic act and also executed on June 28, 1994, is an Act of Inter Vivos Donation of Immovable Community Property from Woodrow (Sr.) and Olive to the trust. About one year later, the trust agreement was amended so as to provide, inter alia, that Paul Fogg would become sole trustee after his parent’s death. Paul was notified of this amendment, and accepted the appointment by signing an acknowledgement on June 19, 1995. By the terms of the original and amended trust agreements, the trust would terminate nine months after the death of the last surviving parent.[1]
From the time of Woodrow’s (Sr.) death in 1995 to 1998, Olive lived with and was cared for by Paul Fogg, who also managed all of her affairs during that time. Upon her death on August 19, 1998, Paul continued to administer all of his parents’ assets, apparently in his capacity as trustee. Although the trust ended by its own terms in 1999, which was nine months after Olive’s death, Paul continued to manage all of the assets after that time.
Paul’s brother, Woodrow, represents that, from time to time, he asked Paul for information about his management of the properties, but he never received an accounting of Paul’s management. On February 14, 2011, Woodrow filed the present action for an accounting of the management of the trust, and for damages in the event that the trust property has been mismanaged. Paul eventually urged a motion for summary judgment alleging that their mother, Olive, suffered from Alzheimer’s disease and was not competent to knowingly execute either a power of attorney or a trust agreement in 1994, and that the trust agreement was therefore a nullity. He submitted, in conjunction with his motion for summary judgment, affidavits from himself and several of Olive’s grandchildren to the effect that she was incompetent to manage her own affairs after about 1990. Also attached to the 14motion were a number of medical reports from Olive’s treating physician, all of which indicated that she suffered from dementia. No affidavits or other testimony from the notary or the witnesses to these acts were presented.
On the above evidence, the trial judge determined that Olive indeed lacked the capacity to execute the documents, and therefore no trust ever came into existence. Because the petition apparently sought an accounting of the assets of a non-existent trust, the trial judge granted the summary judgment and dismissed the *152 entire suit with prejudice. This appeal followed.
DISCUSSION
Summary judgments are reviewed de novo by appellate courts. Shelton v. Standard/700 Associates, 01-0587 (La.10/16/01), 798 So.2d 60. Under that standard, the issue is whether there exists any dispute as to material facts, and if not, is the mover entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
In the present case, the pertinent documents are all executed as authentic acts. In Wiedemann v. Wiedemann, 09-41 (La.App. 5 Cir. 12/29/09), 30 So.3d 972, this court noted that La. C.C. art. 1835 provides that an authentic act constitutes full proof between the parties. That article also lists heirs as parties so bound. Also, La. C.C. art. 1848 provides that testimonial or other evidence may not be admitted to vary or negate the contents of an authentic act, except to show vices of consent, simulation, or to prove modification by later agreements, and jurisprudence has permitted such evidence to show error, fraud or duress. Id. Moreover, authentic acts are presumed to be valid, and a party asserting otherwise must present strong and convincing proof of such magnitude as to overcome the presumption. Meltzer v. Meltzer, 95-0551, 95-0552 (La.App. 4 Cir. 9/28/95), 662 So.2d 58, writ denied 95-2616 (La.1/5/96), 666 So.2d 293.
1 sHere, Paul, the mover for summary judgment, presented the affidavits of himself and three of Olive’s grandchildren, to the effect that Olive was suffering from Alzheimer’s disease and could not have understood the documents at issue. All of the affiants also identified Olive’s purported signatures on the trust document of June 28, 1994, as well as on the accompanying power of attorney, as being made by her husband, Woodrow (Sr.). It is notable that to the untrained eye, the signatures on the trust document appear quite different from that on the power of attorney, but this discrepancy was claimed by all of the affiants as being due to their grandfather being drunk when the signature on the power of attorney was affixed. There is no explanation of how he became inebriated between the signing of the trust document and the signing of the power of attorney, especially when these documents appear to have been executed contemporaneously by the same notary and before the same witnesses. Neither is there any explanation of why the notary and two witnesses, by their signatures, in effect attested to the fact that Olive had indeed signed the document.
Also submitted with the motion for summary judgment were the medical notes of Dr. Benjamin Seltzer, a neurologist, who had treated Olive from 1992 to 1994. These reports confirm the diagnosis of Alzheimer’s disease, and note Olive’s declining mental condition. However, no direct opinion is given by Dr. Seltzer as to whether Olive was capable of basically comprehending that she was authorizing her husband to act in her stead by giving him a power of attorney.
In considering all of the above evidence, it is evident to this Court that there are issues of material fact as to Olive’s mental state on June 29, 1994, the actual date when the power of attorney was executed. That being the case, summary judgment was not appropriate on the question of whether a trust was formed, and we hereby vacate the judgment.
IfiWe further point out that there is a second reason that the judgment was erroneous. While La. C.C. art. 2347 provides that the concurrence of both spouses is required to alienate community property, La. C.C. art. 2353 further provides that alienation of community property by one *153 spouse acting alone is only a relative nullity. Even assuming arguendo that Olive was incompetent to grant a power of attorney, her husband was capable of establishing a trust and transferring their community property to it without her consent so long as she, or someone acting on her behalf, did not object. There is no question that Paul was aware of his mother’s condition and the documents surrounding the trust agreement when he accepted an appointment as trustee on June 19, 1995. If he had questions about the validity of the trust, he could have petitioned to have his mother interdicted and to set aside the acts of his father. No such action was ever undertaken, and thus the actions of his father were never nullified.
We finally note that Paul has urged in this court an exception of prescription, and advances a number of theories in its support, including: 1) that there was no trust, 2) that if there was a trust it has long expired and it is now too late to ask for an accounting under the trust code, 3) that prior to their mother’s death he was her caretaker and was administering to her from non-trust assets, and therefore a different prescriptive period might apply to these funds, and 4) that, sometime in 2002, he and his brother divided the assets on hand from their parents and became co-owners in indivisión, a circumstance to which yet another prescriptive period might apply. Because these theories are for the most part fact intensive, we decline to rule on the exception of prescription, and instead remand that issue to the district court for resolution.
Paul also argues in his memorandum in support of the exception of prescription that an accounting has in fact been provided, and refers to a number of |7documents in the record which appear to substantiate this claim. While there appears to be some merit to the assertion that an accounting has been made, we are unable to ascertain from these records whether that accounting is complete, or whether Woodrow is able to controvert that accounting. Again, these are factual matters which are better resolved in the district court.
DECREE
For the foregoing reasons, the summary judgment ruling that a valid trust was not confected, and dismissing the suit with prejudice, is hereby vacated, and the matter is remanded to the district court for further proceedings consistent with this opinion.

JUDGMENT VACATED; MATTER REMANDED.

. For reasons not apparent from the record, a second Revocable Living Trust Agreement was confected by authentic act on November 19, 1994.