CHRISTOPH PATRICK BAJEWSKI

VERSUS

CHRISTINA BOTROS BAJEWSKI

NO. 23-CA-552

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 735-995, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

October 09, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Scott U. Schlegel, and Timothy S. Marcel

**<u>AFFIRMED</u>**
 **TSM**
 **FHW**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
CHRISTOPH PATRICK BAJEWSKI
    Jennifer C. Carter
    Dixon C. Brown

COUNSEL FOR DEFENDANT/APPELLEE,
CHRISTINA B. BRIGNAC
    James E. Moorman, III

**MARCEL, J.**

In this case concerning the revocation of inter vivos donation of immovable property, plaintiff Christoph Bajewski, former spouse of defendant Christina Botros Brignac (formerly Bajewksi), appeals a judgment of the trial court denying and dismissing his petition with prejudice. For the following reasons, we affirm the judgment of the trial court.

BACKGROUND

In 2007, during the course of their marriage, the Bajewskis sought to obtain a home renovation loan. The parties executed a document titled "quitclaim deed", concurrent with a loan mortgage with Capital One Home Loans, LLC, in order to gain the benefit of Ms. Brignac's credit rating. In the quitclaim deed, Mr. Bajewski conveyed his undivided interest in a separate property home at 1046 Hawkins Street, Gretna, Louisiana to himself and his wife jointly. The quitclaim deed states that it was signed on April 19, 2007 by the Bajewskis, two witnesses (Wayne and Lara Scholle), and the notary, Victoria Sumrall.

The Bajewskis divorced on March 1, 2013. Less than a year later, on February 28, 2014, Mr. Bajewski filed a Petition for Revocation of Inter Vivos Donations wherein he sought the return of inter vivos donations made during the course of the marriage, in particular a diamond engagement ring, a large Thomas Kinkade painting, and the interest in the property at 1046 Hawkins Street. The initial petition sought revocation on the basis of ingratitude, La. C.C. arts. 1556-7, but was subsequently amended in 2016 with additional claims by Mr. Bajewski that the transfer of the Hawkins Street property was null because the quitclaim deed was not a valid authentic act. Litigation proceeded for many years.

While this action was pending, Mr. Bajewski also filed a Petition to Annul Transfer of Property in his divorce/child custody proceedings raising the same claims. This case and those proceedings were consolidated for a time, but then

deconsolidated for the purposes of trial on these claims. By the time the matter came to trial on May 1, 2023, the only outstanding issue to be resolved was Mr. Bajewski's contention that the quitclaim deed was invalid because the form requirements of an authentic act had not been met. In particular, Mr. Bajewski claimed that the quitclaim deed was invalid because it was executed and witnessed outside the presence of the notary. All of the signatories of the quitclaim deed were called to testify at trial: Mr. Bajewski, Ms. Brignac, the Scholles, and the notary.

Following trial, the court issued a judgment in favor of the defendant, Ms. Brignac, and dismissing Mr. Bajewski's claims with prejudice. In her written reasons for judgment, the trial court specifically found the testimony of Mr. Bajewski and his friends, Wayne and Lara Scholles, to be self-serving and inconsistent, while the testimony of Ms. Brignac and Ms. Sumrall was consistent and credible. The court determined that Mr. Bajewski had failed to present convincing proof sufficient to overcome the presumption that the quitclaim deed was properly executed and notarized.

On appeal, Mr. Bajewski argues that the trial court committed manifest error denying plaintiff's petition despite a clear and convincing showing that the quitclaim deed was not made by authentic act. We consider plaintiff's arguments in our discussion below.

DISCUSSION

A donation inter vivos shall be made by authentic act under the penalty of absolute nullity. La. C.C. art. 1541. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. La. C.C. art. 1833. To be an authentic act, the writing need not be executed at one time or place, or before the

same notary public or in the presence of the same witnesses. *Id.* However, each party who executes the document must do so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses. *Id.* The signature of each party, each witness, and each notary public is required. *Id.* A transfer of immovable property must be made by authentic act or by act under private signature. La. C.C. art. 1839. The transfer by a spouse to the other spouse of immovable property forming part of his separate property, with the stipulation that it shall be part of the community, transforms the immovable property into community property. La. C.C. art. 2343.1.

The purpose of the authentic act requirements is to insure the validity of a signature on a document and that the person whose name appears thereon is the person who actually signed the document. *Zamjahn v. Zamjahn*, 02-871 (La. App. 5 Cir. 1/28/03), 839 So.2d 309, 315. An authentic act is presumed to be valid and a party asserting otherwise must present strong and convincing proof of such a magnitude as to overcome this presumption. *Fogg v. Fogg*, 13-712, (La. App. 5 Cir. 5/14/14), 142 So.3d 150, 152; *Wiedemann v. Wiedemann*, 09-41 (La. App. 5 Cir. 12/29/09), 30 So.3d 972, 974.

On its face, the deed appears to be a properly executed authentic act. It transfers the property located at 1046 Hawkins Street, Gretna, Louisiana, owned by Christoph Bajewski to Christoph and Christina Bajewski, husband and wife. It is signed by both the Bajewskis and two witnesses, Wayne and Lara Scholle, as well as a notary, Victoria Sumrall. Because the statutory requirements for an authentic act have been met, the burden is on Mr. Bajewski to prove the deed was not properly executed.

Mr. Bajewski claims that the quitclaim deed was not properly executed in the presence of the notary, and therefore the act is invalid. Whether or not the quitclaim deed was properly executed is a question of fact. In civil cases, the

appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Harvey Canal Ltd. P'ship v. Nat'l Response Restoration Corp.*, 23-195 (La. App. 5 Cir. 1/31/24), 380 So.3d 683, 686. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell v. ESCO*, 549 So.2d 840, 844–45 (La.1989). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id*. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id*.

At the bench trial, the judge heard testimony from all of the signatories to the quitclaim deed. Ms. Brignac testified that she signed the quitclaim deed in the presence of Mr. Bajewski, the Scholles, and the notary Ms. Sumrall at the Hawkins Street property which is where she and Mr. Bajewski were living at the time. She did not recall who signed the document first or any other details surrounding the signing of the documents, but did confirm that she saw Mr. Bajewski sign the deed and the two witnesses in front of the notary at their dining room table. She recalled walking the notary to the door after the signing, thanking her for coming to the house to conduct the signing, and apologizing for some rude behavior of Mr. Bajewski.

The notary, Victoria Sumrall, testified that she has worked as a notary since 1995 and has acted upon hundreds if not thousands of documents. As part of her practice, she did not have an office, but instead met people at their homes to perform her notary duties. Ms. Sumrall did not have clear recollections of the event, but did recall seeing the document signed in front of her. She testified that the signature on the document was hers. She recalled being told to sit down and shut up by the seller, but did not recognize Mr. Bajewski in court as that person.

Mr. Scholle testified that the signature on the document was his. He testified that Mr. Bajewski had brought the deed to Mr. Scholle's house to be signed. When he signed it, there were no other signatures on the document, and Mr. Bajewski was the only other party present. After he signed the document, he left the room to take care of children while his wife Lara went to sign the document. He stated that he was not sure if he understood at the time that he was being asked to sign as a witness attesting to the fact that he saw Mr. Bajewski and Ms. Brignac sign the document.

Mrs. Scholle testified that she recognized her signature on the document. She recalled being at her home in the kitchen when Mr. Bajewski brought the document to her to sign. She and Mr. Bajewski were the only ones present in the kitchen at the time. She believes she was the last one to sign the document. She did not recall seeing Mr. Bajewski, Ms. Brignac, or Ms. Sumrall sign the document.

Mr. Bajewski testified that he signed the document at his house after picking it up from the bank, instructed Ms. Brignac to sign, and then brought the documents over to the Scholle's house for them to sign per instructions he received from the bank. He stated that Ms. Sumrall never came to the home. He never signed the documents in the presence of the Scholles or Ms. Sumrall. Once the documents were signed, he dropped them off at the bank. He testified that when he dropped off the paperwork at the bank, it had not been signed by the notary.

Upon review of the entire record, we find no manifest error in the trial court's decision to credit the testimony of Ms. Brignac and Ms. Sumrall over that of Mr. Bajewski and the Scholles. Where there is a conflict in the testimony of witnesses, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Salgado v. Tri-Par. Roofing & Home Improvements*, 19-407 (La. App. 5 Cir. 5/27/20), 296 So.3d 1201, 1205-6 (citing *Glob. Constr. & Equip., L.L.C. v. Rathborne Properties, L.L.C.*, 18-169 (La. App. 5 Cir. 5/29/19), 274 So.3d 837, 841.) Mr. Bajewski has not provided any objective evidence to support his claims or to contradict the testimony of the witnesses. While the testimonies of Ms. Brignac and Ms. Sumrall conflict with those of Mr. Bajewski and the Scholles regarding where, when, and in what order the document was signed, we do not find their testimonies to be so internally inconsistent or implausible that a reasonable fact finder would not credit their stories.

Finding no manifest error in the trial court's determinations, we affirm the judgment of the trial court.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 9, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-552**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
DIXON C. BROWN (APPELLANT)          JENNIFER C. CARTER (APPELLANT)          JAMES E. MOORMAN, III (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED